UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| IPofA WEST 86TH STREET 1, LLC, et al., )<br>    Plaintiffs, )<br>                                            )<br>   vs.                             )       1:09-cv-0573-SEB-DML<br>                                            )<br>MORGAN STANLEY MORTGAGE )<br>CAPITAL HOLDINGS, LLC, )<br>    Defendant. ) | |

**ENTRY ON CROSS MOTIONS FOR SUMMARY JUDGMENT**

There are twenty Plaintiffs in this lawsuit. Each is a limited liability corporation set up specifically to hold a fractional ownership interest, as a tenant in common with the other nineteen limited liability corporations, of a commercial warehouse building located in Indianapolis, Indiana. In December 2004, Plaintiffs paid a total of $12,650,000 to buy the property through a private placement sponsored by Investment Properties of America, LLC, a company wholly owned by Ed Okun, who was also the principal in several affiliated entities involved in numerous real estate investments. All of the tenants in common were looking to participate in Okun's private placement in order to gain certain tax advantages with respect to profits or capital gains that had been generated by previous real estate investments. The purchase price included a $6,550,000 cash down payment and a $7,100,000 loan from Dise Group, LLC.

In February 2005, Morgan Stanley Mortgage Capital, Inc., predecessor to Defendant Morgan Stanley Mortgage Capital Holdings, LLC (hereinafter "Morgan Stanley"), refinanced the Dise Group loan with a $7,100,000 loan to Plaintiffs, $6,100,000 of which was used to refinance the property. The remaining $1,000,000 of these borrowed funds was placed in a reserve escrow account held by Morgan Stanley to cover reimbursement to the owners for tenant improvements, leasing commissions and necessary repairs to the building. In order to obtain the loan, Plaintiffs granted a mortgage and security interest in the building, lease receipts and escrow funds to Morgan Stanley. Because the building was owned by numerous tenants in common, Morgan Stanley required the Plaintiffs to authorize a single entity to sign the relevant loan documents. Each Plaintiff executed an Amended and Restated Limited Liability Company Agreement, which named IPofA Fund Manager, LLC ("IPA Manager") as its Vice President and authorized it to execute the necessary loan documents. IPA Manager was an entity owned by Ed Okun and managed by his associate, Lara Coleman.

Morgan Stanley sought to pool the $7,100,000 loan to Plaintiffs with other mortgage loans and sell the pool to a trust for the ultimate purpose of creating and selling mortgage-backed securities. However, because Morgan Stanley would have had to accept a downward price adjustment on the loan, it elected instead to accept an offer made by Ed Okun, who indicated in May 2006 that two of the tenant in common owners were willing to purchase the loan at ninety percent of the balance. A sale of the loan was

anticipated all along and the loan documents allowed Morgan Stanley to sell or assign the loan without a requirement that each of the Plaintiffs approve or authorize such a sale.

Mr. Okun formed an entity known as IPofA 5201 Lender, LLC, ("IPA Lender") to purchase the loan from Morgan Stanley, which purchase occurred on August 11, 2006. The structure of that purchase is the root cause of the dispute now before the Court. Morgan Stanley did not independently transfer or assign the escrow and reserve accounts as Plaintiffs claim it was required to do. Instead, it "netted-out" the $1,361,184.63 it held in escrow for taxes, insurance and reimbursement of leasing commissions and improvements; more specifically, Morgan Stanley assigned its rights and interests in those funds through an Omnibus Assignment to IPA Lender and then credited those funds to reduce, by that amount, the overall agreed price for the loan. Morgan Stanley assumed that IPA Lender would take the necessary steps to comply with the obligations it had assumed as the new holder of the loan, such as maintaining escrow and reserve accounts.

At some point following the sale of the loan to IPA Lender, Plaintiffs inquired as to the availability of escrow and reserve funds only to learn that IPA Lender was holding no escrow or reserve accounts. Plaintiffs eventually defaulted on the mortgage loan payments and surrendered the investment property to a subsequent holder of the loan. At some time thereafter, Ed Okun was convicted of wire fraud and money laundering and sentenced to 100 years in federal prison for bilking his real estate investment clients out

of more than $126 million, and Lara Coleman pled guilty to various fraud related crimes in exchange for a recommended ten-year sentence.

Plaintiffs have brought this lawsuit against Morgan Stanley based upon language contained in Section 3.4 of the Reserve and Security Agreement, which was part of the Morgan Stanley loan documentation, which provides:

> **Assignment Of The Reserves.** Borrower understands and agrees that, in connection with any sale of the Loan pursuant to Section 18.1 of the Security Instrument, all of Lender's interest in the Reserves and Reserve Escrow Accounts will be assigned to the transferee of the loan.

According to Plaintiffs, rather than assigning the accounts directly to IPA Lender, Morgan Stanley relied upon a document captioned "Borrower's Escrow Instructions" to simply net-out the escrow funds. Plaintiffs claim that that document sufficed to relinquish Plaintiffs' rights with respect to the escrow funds <u>only</u> if Plaintiffs had signed it; however, the document was signed only by Lara Coleman in her capacity as the manager of IPA Manager, which, according to Plaintiffs, had been authorized to sign and act on their behalf only in connection with the original loan, not the sale or assignment of that original obligation to Morgan Stanley. On this basis, Plaintiffs assert their breach of contract and conversion claims against Morgan Stanley for its "netting-out" the escrow and reserve funds instead of assigning those accounts directly to IPA Lender.

The parties have filed cross motions for summary judgment. Though the facts are somewhat complex, the issues for us to resolve are relatively straightforward: Did

Morgan Stanley's "netting out" of the escrow and reserve funds constitute a breach of its agreement with Plaintiffs and, if so, did the "netting-out" amount to criminal conversion, thereby entitling Plaintiffs to treble damages, pursuant to Ind. Code § 34-24-3-1?

**Summary Judgment Standard**

It is not an uncommon practice for parties to file cross-motions for summary judgment; Rules 56(a) and (b) of the Federal Rules of Civil Procedure specifically permit both plaintiffs and defendants to seek such relief. Claims rooted in contract with few or no factual disputes are particularly amenable to resolution as a matter of law, given that they often are limited to contract interpretation issues, which typically involve questions of law for the court to determine. *Reginald Martin Agency, Inc. V. Conseco Med. Ins. Co.,* 388 F.Supp.2d 919.924 (S.D.Ind. 2005). When faced with competing summary judgment motions, the court considers each party's motion individually to determine if that party has satisfied the summary judgment standard. *Kohl v. Ass'n. of Trial Lawyers of America*, 183 F.R.D. 475 (D.Md.1998). Thus, in determining whether genuine and material factual disputes exist in this case, the parties' respective memoranda and supporting affidavits and exhibits are analyzed and all facts and reasonable inferences resolved and construed in a light most favorable to the respective non-movant. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). Having conducted such an analysis here, we hold that Defendant's motion must be granted and Plaintiff's motion must be denied.

**Discussion**

No one disagrees with the fact that Ed Okun was the true "culprit" here; even so, any breach of contract or conversion on the part of Morgan Stanley is not excusable simply because of Okun's and/or Lara Coleman's criminal acts. What matters in that regard is whether Morgan Stanley was contractually obligated to refrain from structuring and executing the sale and assignment of the loan in the manner pursued here. In resolving this issue, we conclude as a matter of law that Morgan Stanley neither converted the escrow funds nor breached its agreement with Plaintiffs.

The Morgan Stanley refinancing of the original Dise Group loan to Plaintiffs was memorialized in the following documents:

1. A Promissory Note
2. A Mortgage and Security Agreement
3. A Reserve and Security Agreement

Each of these documents was contemporaneously executed by the Plaintiffs after each had amended its individual LLC agreement in identical fashion to authorize IPA Manager, the entity serving as each LLC's Vice President, to:

> ... execute enter into, deliver, and perform the Loan Documents and all documents, agreements, certificates or financing statement contemplated thereby or related thereto ... all without any further act, vote or approval ....

The amended LLC agreements defined "Loan Documents" as:

> ... any and all documents evidencing or securing the Loan or any assumptions thereof, including, without limitation, any promissory note, mortgage, assignment of leases and rents, indemnity agreement, certificate,

escrow agreement, consent or subordination agreement or the functional equivalent of any of the aforementioned, and any and all other documents evidencing or securing the Loan and any and all documents related thereto.

Pursuant to Article III of these identical amended LLC agreements:

> "Third Parties dealing with the Company shall be entitled to conclusively rely on the signature of the Vice President as evidence of the authority of the Vice President to execute the Loan documents on behalf of the Company and bind the Company."

In addition to the amendments to each Plaintiff's LLC agreement, an officer of each Plaintiff executed a document entitled "Consent of Co-Owners," which authorized a single agent, IPA Manager, as Vice President of each Plaintiff, to take certain actions on behalf of the Co-Owners and execute the loan documents, including:

> "... any and all commitments, pledges or assignments of any other collateral, indemnities, certificates, affidavits, financing statements, applications, notices and other instruments, agreements or certificates related to the Loan, and to take from time to time any other actions necessary to effect the transactions contemplated above, upon the terms and conditions identical in all material respects to those terms and conditions set forth in the commitment letter attached hereto ... and the execution and delivery of such agreements and documents by such Vice President shall constitute conclusive evidence that the terms and conditions contained in said documents or instruments have been approved on behalf of the Co-Owners ... ."

Typically, Morgan Stanley held such mortgage loans for only a short period of time and these loan documents were, without question, written in anticipation of the sale or assignment of the loan. The loan documents include no requirement that entitles Plaintiffs to receive any notice of such a transfer of the loan; to the extent that such a

requirement is implied, the Mortgage and Security Agreement make clear that such notice requirement would be satisfied by notice to Ed Okun.

The Reserve and Security Agreement obligated Plaintiffs to fund various reserve accounts to ensure that money was available to take care of certain obligations and necessities. In addition to making monthly escrow contributions, Plaintiffs were required to deposit one million dollars in an account specifically reserved for tenant improvements and leasing commissions, and to pledge those funds as additional security for the loan. Importantly, Section 3.1 of the Reserve and Security Agreement provides, in relevant part:

> The funds contained in each of the Reserves shall be under the sole dominion and control of the Lender. The Reserve Escrow Accounts and the funds therein shall not constitute a trust fund and may be commingled with other monies held by Lender.

A careful review of Section 3.4 of the Reserve and Security Agreement, upon which the Plaintiffs have based their lawsuit, does not reveal any right possessed by Plaintiffs requiring Morgan Stanley when selling the loan to structure a transfer or assignment of the reserve funds in any particular manner. What that Section does provide is that "Borrower understands and agrees" that an assignment of Morgan Stanley's interest in the reserves will accompany any transfer of the loan to the subsequent lender. This reflects Plaintiffs' acknowledgment of Morgan Stanley's right to assign its interests in the reserve funds, but not necessarily the funds themselves, to the new lender.

Moreover, even if some sort of assignment is deemed essential as part of any transfer of the loan, Plaintiffs' interpretation of "assignment" as the transfer of specific identifiable funds or accounts is inconsistent with Section 3.1 of the Reserve and Security Agreement. All documents perfecting the loan are to be construed together, and when so analyzed, disclose no ambiguity in their provisions; thus, the Court is spared the task of having to construe the terms relating to the identification and assignment of specific funds in a way other than what was originally contemplated by the parties' agreement. *Niezer v. Todd Realty, Inc.,* 913 N.E.2d 211, 215 (Ind.App. 2009) ("unambiguous contractual language is conclusive upon the parties and the courts"); *Noble Romans, Inc. v. Ward,* 760 N.E.2d 1132, 1138 (Ind.App. 2002)("writings executed at the same time and relating to the same transaction or subject matter will be construed together").

Simply stated, based on our review of the applicable documents, Morgan Stanley appears to have performed in all respects in accordance with its contractual obligations when it assigned its rights and obligations under the original loan documents to IPA Lender through the Assignment of Mortgage and Security Agreement, the Omnibus Assignment and the Allonge relating to the transfer of the loan. Plaintiffs' singular focus only on the Escrow Instructions is therefore unavailing.

Plaintiffs maintain that the Escrow Instructions form, which was signed on their behalf by Lara Coleman, was executed without appropriate authorization, and that a June 27, 2006 e-mail communication from Morgan Stanley's attorney to the in-house attorney

for Investment Properties of America stating that such escrow instructions would need to be included as part of the loan sale is evidence establishing that the execution of a separate document was necessary for the transfer to be consistent with the original loan documents.  We are not persuaded, however, that such a separate document was required. Morgan Stanley's reference to the necessity of a separate document may have reflected an excess of caution on its part or may have reflected a simple misinterpretation or misapprehension of its  obligations under the loan documents, because, in fact, Plaintiffs' contractual agreement permitted the transfer of the loan even without their having knowledge or giving prior consent, and Morgan Stanley's assignment of its interests in the reserve funds to the new lender permitted a sale of the loan as structured by netting-out the funds held in reserve or escrow by Morgan Stanley.

Even if the Escrow Instructions or some other documentation were deemed necessary to authorize Morgan Stanley's structuring of the transaction as it did, the sweeping authority granted by Plaintiffs to IPA Manager, as evidenced in their amended LLC agreements and the Consent of Co-owners, was sufficient to permit Morgan Stanley to justifiably rely on IPA Manager's authority to release the funds without requiring  the co-owners' individual signatures.  The authorization by Plaintiffs to IPA Manager extended to the execution of the original loan documents and "all documents, agreements ... contemplated thereby," and the term "Loan Documents" was defined to include  "any and all documents evidencing or securing the Loan and any and all documents related

thereto." "Related thereto" clearly is an expansive term, *see Morales v. Trans World Airlines, Inc.,* 504 U.S. 374, 383 (1992), deliberately chosen, we assume. No convincing rationale supports a finding that the documents effectuating the transfer of the loan and other obligations to IPA Lender were not "related to" the original loan as referenced in the documents effecting the assignment.

Obviously, without proof of a contractual breach there can be no viable claim of criminal conversion. In addition, the decision in *Excel Industries, Inc. v. Signal Capital Corp.,* 574 N.E.2d 946 (Ind.App. 1991) teaches that under Indiana law no conversion can be found where deposited funds cease to exist as a separate, specifically identifiable fund. Because Plaintiffs permitted the commingling of the reserve funds, any alleged restriction based on a purported bar as to the use of the funds to net-out a later transaction is unsupportable. Plaintiffs' claim that the money was "kept" by Morgan Stanley is little more than a rhetorical device, if not an outright misrepresentation, in light of all the facts and circumstances underlying the loan transaction before us.

**Conclusion**

Plaintiffs entrusted Ed Okun with their money only to have him seriously hoodwink them. No amount of creative legal maneuvering can successfully shift their losses to others involved in the transactions. With respect to Plaintiffs' specific claims in this lawsuit, Morgan Stanley is entitled to prevail on summary judgment because the

manner in which it structured the transfer of the original loan obligations and related reserves and escrow funds conformed to the requirements of the original loan documentation and the authorizations contained in each of the Plaintiffs' amended LLC agreements. Therefore, Plaintiffs' Motion for Summary Judgment (Doc. #30) is DENIED, and Defendant's Motion for Summary Judgment (Doc. #79) is GRANTED. A separate judgment shall issue accordingly.

IT IS SO ORDERED.

Date: 07/21/2011

*Sarah Evans Barker*
SARAH EVANS BARKER, JUDGE
United States District Court
Southern District of Indiana

Copies to:

Jennifer Westerhaus Adams
BARNES & THORNBURG LLP
jennifer.adams@btlaw.com

Constance M. Boland
NIXON PEABODY LLP
cboland@nixonpeabody.com

Monica Renee Brownewell Smith
BARNES & THORNBURG LLP
monica.brownewell@btlaw.com

Karoline E. Jackson
BARNES & THORNBURG LLP
kjackson@btlaw.com

Robert Joseph Nice
THE NICE LAW FIRM
rjnice@nice-law.com

William E. Padgett
BARNES & THORNBURG LLP
william.padgett@btlaw.com